IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUAN SOTO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 19 CV 08504 |
| ) | |
| CICERO POLICE DEPARTMENT ) | Judge John J. Tharp, Jr. |
| AND TOWN OF CICERO, ) | |
| ) | |
| Defendants. ) | |

## ORDER

For the reasons set forth below, Cicero's motion [11] to dismiss is granted in part and denied in part, and its motion to strike is denied. A telephone status hearing will be conducted on Monday, October 18, 2021 at 9:30 a.m. Dial-in information will be provided by a separate docket entry. The parties are directed to meet and confer regarding a case management schedule in advance of the status hearing.

## STATEMENT

Juan Soto became an officer with the Cicero Police Department in 1999, rising to detective in 2001. Compl. ¶¶ 15-16. He received positive reviews throughout his career and was recently recommended for a supervisory position. *Id.* at ¶ 18-19. His career trajectory abruptly changed, however, on August 7, 2018.

On that day, Soto and his partner, Angie Ingve, heard a radio call from the dispatcher describing a vehicular hijacking. *Id.* at ¶ 34. Soto drove towards the location while the dispatcher made another call describing the suspect and the victim's vehicle. Believing that the suspect might be heading for Chicago, Soto drove a short distance into Chicago to search for the suspect before returning to Cicero. Compl. ¶ 36. Upon arriving at the Cicero police station, Dominic Schullo, the Assistant Deputy Superintendent, repeatedly asked why Soto and his partner were in Berwyn when the carjacking call came through; Soto and Ingve denied being there. ¶ 48. Several minutes later, Ingve was called on the radio by another officer, asking whether she and Soto were going to interview the victims of the hijacking. Soto and Ingve answered that they were not going to do so because those investigations are handled by robbery detectives. ¶ 50. Their response angered the Superintendent, Chlada, ¶ 51, and several hours later Soto was told by a supervisor that Chlada was demoting them to the patrol division for not meeting with the victim of the vehicular hijacking. ¶ 53.

About a week later, on August 16, 2018, Chlada formally demoted Soto and Ingve to the patrol division for not meeting with the carjacking victim. *Id.* ¶¶ 53-54. Soto was reassigned to patrol on the midnight shift, *Id.* at ¶ 59, and on August 20, he met with a union representative and filed a grievance against Chlada. Two months after the carjacking incident, Soto was presented

with a written reprimand, which he refused to sign until a supervisor ordered him to do so. ¶¶ 63-70.

Soto alleges the indignities compounded after this August 2018 demotion. His supervisors refused to provide him with a proper uniform for working in the patrol department, while still insisting that he perform detective work. ¶ 76, 80. They accused him of abusing his sick days, even though he had used only three in recent months and had saved over 200 throughout his career. ¶ 77-78. Chlada tracked his movements and checked cameras to see when Soto arrived at work and left. ¶¶ 81-82. Finally, concluding that he had been constructively terminated, Soto resigned in December 2018. ¶ 84.

Soto is an American of Mexican descent, *Id.* at ¶ 1, while his supervisors, including Chlada, are non-Hispanic (more specifically, he alleges that his harassers were of Italian descent). ¶¶ 22, 25, 28, 30, 88. Ingve, his partner on the hijacking call, is also of Mexican descent. Soto is also over 40 years old. ¶ 32. One officer told Soto that a supervisor "stated that the older detectives were set in their ways and had to change." ¶ 73. The officers assigned to the burglary team, all under 40, were promoted to detectives in September 2018; unlike Soto, they were not state certified as detectives. ¶ 75.

Soto filed a discrimination charge with the Illinois Department of Human Rights on August 28, 2018 (about two weeks after he was demoted following the carjacking call). First IDHR Charge, Ex. A to Compl., ECF No. 1-1. In that charge, he complained he was demoted because of his national origin. *Id.* at 2. He filed a new charge on September 13, 2019 claiming that he was demoted due to age discrimination, subjected to a hostile work environment due to his age and national origin, and that he was demoted in retaliation for exercising his rights under the Age Discrimination in Employment Act and under Title VII. Second IDHR Charge, Ex. B to Compl., ECF No. 1-2. Soto filed this action on December 30, 2019, which lists a series of legal theories as counts asserting why the conduct alleged violates the ADEA, Title VII, and Illinois' Uniform Peace Officers' Disciplinary Act.

The defendants argue the complaint should be dismissed because Soto's age discrimination and retaliation claims are time-barred or unexhausted, Soto failed to plead that he engaged in protected activity that would occasion retaliation, and he did not exhaust his claim that he was constructively discharged. Defendants also move to strike counts III and VIII as redundant and seek dismissal of the state law theories in Counts IX and X as failing to state a claim on which relief can be granted. Cicero does not seek dismissal of Soto's hostile work environment claims. Mot. to Dismiss 3 n.2, ECF No. 11.

**<u>Demotion Based on Age Discrimination</u>**

Under both Title VII and the ADEA, Illinois plaintiffs pursuing discrimination claims must file a charge with either the Illinois Department of Human Rights (IDHR) or the Equal Employment Opportunity Commission (EEOC) within 300 days of the allegedly discriminatory acts. 42 U.S.C. § 2000e-5(e)(1); *Hamilton v. Komatsu Dresser Indus.*, 964 F.2d 600, 603 (7th Cir. 1992). Cicero argues that the age discrimination and retaliation allegations added in the second, September 2019 IDHR charge are time-barred (though not the hostile work environment claims, which are subject to the continuing violation rule, *see* Mot. to Dismiss 3 n.2). The plaintiff argues

in response that exhaustion of administrative remedies is not a jurisdictional prerequisite to suit, but rather an affirmative defense that a plaintiff is not required to plead around. *Salas v. Washington Dept. of Corrections*, 493 F.32d 913, 921 (7th Cir. 2007).

While it is true that dismissal on the pleadings due to a failure to exhaust is atypical, dismissal based on an affirmative defense is warranted when the complaint sets forth everything that is necessary to establish the defense. *Bonnstetter v. City of Chicago*, 811 F.3d 969, 974 (7th Cir. 2016). Soto attached both IDHR charges to his complaint; those charges provide the dates and list the claims he made in each instance, so he has provided Cicero everything it needs to establish the affirmative defense with respect to the claim that Soto was demoted based on his age. Soto filed his charge alleging demotion on account of age discrimination on September 13, 2019; under the 300-day limitation period, Cicero is only liable for allegedly discriminatory acts that occurred on or after November 17, 2018. Soto was demoted in August 2018, so his claim that the demotion was animated by age discrimination was not timely exhausted and is dismissed with prejudice.

**Retaliation based on exercise of rights under Title VII and the ADEA**

Cicero also argues that Soto's claims of retaliation were not timely exhausted, and alternatively, that they are insufficiently plead under the standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) because Soto did not allege that he engaged in protected activity. A plaintiff bringing a Title VII retaliation claim must allege that "[s]he engaged in protected activity and suffered an adverse employment action, and that there is a causal link between the two." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016).

Soto's claim that he was demoted in retaliation for exercising his rights under Title VII is time-barred—he did not make such a claim to the IDHR or EEOC within 300 days of his demotion. He first made this claim to the IDHR in September 2019, more than a year after his August 2018 demotion. Nor does Soto allege he engaged in any protected activity under Title VII before he was demoted. This claim is accordingly also dismissed with prejudice.

As for the rest of Soto's Title VII retaliation claim, he alleges he was constructively discharged in December 2018, and that he suffered a hostile work environment in the months before his discharge. Among other things, Soto alleges that he was unfairly accused of abusing his sick days, that he was intrusively monitored by his supervisors, and that he suffered various other indignities like being denied the proper uniform for his new patrol duties. Compl. ¶¶ 76-80. True, Soto's complaint did not explicitly identify the protected activity he engaged in that prompted his employer to retaliate, as it must to state a claim for retaliation. *See, e.g., Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). But Soto attached his August 2018 IDHR charge to his complaint, in which he alleged he was demoted on account of his national origin. Filing that complaint qualifies as engaging in protected activity, and the Court can draw the reasonable inference that the subsequent adverse actions allegedly taken against him—in the form of condoning a hostile work environment and constructively discharging him—were in retaliation for Soto filing that IDHR charge. Accordingly, Soto's claim that Cicero retaliated against him by taking these adverse actions (as opposed to demoting him) because he asserted his rights under Title VII survives dismissal.

Soto also alleges that Cicero retaliated against him for exercising his rights under the ADEA. Cicero correctly points out that Soto did not allege he engaged in any protected activity under the ADEA that could form the basis for a retaliation claim. Soto complained of age discrimination to the IDHR in September 2019, but that complaint came months after he left the Cicero Police Department, so that IDHR charge cannot be the protected activity that occasioned any retaliation. Soto's claim that he suffered retaliation for asserting his rights under the ADEA is therefore dismissed without prejudice.

To sum up the disposition of Soto's retaliation claims: his claim that he was demoted in retaliation for conduct protected under Title VII is dismissed with prejudice as time-barred, and his claim that he was retaliated against for engaging in protected conduct under the ADEA is dismissed without prejudice. Soto's claim that Cicero retaliated against him for filing the IDHR complaint of national origin discrimination survives as pled.

**Constructive Discharge**

Cicero also argues that Soto's claim that he was constructively discharged should be dismissed because Soto did not include that claim in his September 2019 IDHR charge. Mot. to Dismiss 6, ECF No. 11. "To determine whether the allegations in the complaint fall within the scope of the earlier EEOC charge, we must look at whether the allegations are 'like or reasonably related to' those contained in the charge." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001). "[T]he reason behind the requirement that allegations not contained in an EEOC charge cannot be contained in the complaint is that the defendant must have notice of the charge." *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989).

Soto contends his claim that he was constructively discharged is "like or reasonably related to" the allegations contained in his September 2019 IDHR charge, and the Court agrees. Constructive discharge occurs when a plaintiff shows that she was forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable. *See Chapin v. Fort–Rohr Motors, Inc.,* 621 F.3d 673, 679 (7th Cir.2010). Soto's 2019 IDHR charge adequately alleges unbearable working conditions such that his claim of constructive discharge should have come as no surprise to his employer.

The cases defendant cites for the proposition that a claim of constructive discharge must be included in an administrative charge or be dismissed are distinguishable. In those cases, the employer could not have been put on notice by the administrative charge because the charge was filed before the employee's departure. *See Herron v. Daimler Chrysler Corp.*, 388 F.3d 293, 303 n.2 (7th Cir. 2004) (affirming summary judgment on constructive discharge claim "[b]ecause Herron failed to establish a hostile work environment" and where employee filed administrative charge before departing his employment); *Smith v. Rosebud Farmstand*, 909 F. Supp. 2d. 1001, 1007 (N.D. Ill. 2012) (noting that "the EEOC charges in *Herron* preceded the plaintiff's resignation," which was inconsistent with the employer having notice of the claim of constructive discharge). Here, the constructive discharge claim was made in an administrative charge that post-dated Soto's alleged discharge by several months and the claims of hostile work environment would have put his employer on notice of his constructive discharge claim. Accordingly, this claim survives dismissal.

**State statutory claims**

Soto also alleges, in counts IX and X of his complaint, various violations of state law over which the Court has supplemental jurisdiction. First, he alleges that Cicero violated the Uniform Peace Officers' Disciplinary Act, specifically 50 ILCS 725/7, which provides that "no officer shall be discharged, disciplined demoted … or otherwise discriminated against in regard to his or her employment, or be threatened with any such treatment as retaliation for or by reason of his or her exercise of the rights granted by this Act." Compl. ¶ 141-42. Second, he claims that Cicero violated Illinois General Assembly Public Act 100-1001 by using arrest and ticket quotas to measure officers' performance. Compl. ¶ 146.

With respect to the claim based on the Uniform Peace Officers' Act, Cicero argues that the Act does not create a private right of action, citing *Cain v. Larson*, 879 F.2d 1424, 1427 (7th Cir. 1989). In *Cain*, the Seventh Circuit held that the Act does not create a property interest in employment that is protected by the Fourteenth Amendment. Cicero argues that *Cain* dictates the Peace Officers' Act does not provide a private right of action. Soto does not make a due process claim here, however, and the question of whether a statute provides a plaintiff with a means to seek any remedy in a private lawsuit is distinct from whether it provides a property interest protected by the Constitution, so this argument is unhelpful. Not that Soto is any more helpful; he provides no argument on this point.

On its face, the Act does not provide any means for private litigants to pursue the damages and declaratory relief Soto pursues in his complaint. Compl. ¶ 143; 50 ILCS 725/1 *et seq*. While it is possible, in theory, that an Illinois Court might imply a private right of action under the statute, *see, e.g. Fisher v. Lexington Health Care Inc.*, 188 N.E.2d 455, 460-61 (1999) (setting forth framework for implying causes of action), the Court doubts a court would do so with respect to this statute, which is focused on dictating procedures for discipline and provides suppression-like remedies in disciplinary hearings. However, this issue has been insufficiently briefed—Cicero's motion conflated the availability of relief under the Fourteenth Amendment with the availability of any relief at all, and Soto simply did not respond.

In any event, the Court need not decide at this juncture whether Soto can seek any kind of relief under the statute; even if he could, he has failed to state a claim. He alleges that Cicero retaliated against him for asserting his rights under the Act in violation of 50 ILCS 725/7, Compl. ¶ 143, but he nowhere alleges how he asserted his rights under the Act. By simply citing the anti-retaliation provision and claiming that Cicero violated it, he offers nothing more than "threadbare recitals of a cause of action's elements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). This claim is accordingly dismissed without prejudice.

As for Soto's claim that Cicero unlawfully employs enforcement quotas in violation of 65 ILCS 5/11-12, Cicero again argues there is no private right of action available. At least one other judge in this District has disagreed with that argument. In *Sinnott v. Town of Cicero*, 2021 WL 979169 *4 (N.D. Ill. 2021) (Kendall, J.), the Court concluded that dismissal on this ground was inappropriate, given that police unions have successfully sued under this provision and there is nothing clearly foreclosing an individual litigant from doing so. *Id.* The Court finds that reasoning persuasive and similarly declines to dismiss this claim for lack of a private right of action.

**Motion to Strike Counts III and VIII**

Finally, Cicero moves to dismiss two of Soto's counts as redundant. Count III alleges "Willful Under the ADEA" [*sic*]; and count VIII alleges "Title VII disparate treatment." As defendant points out, these counts merely elaborate on the Title VII and ADEA theories spelled out in the other counts, but that is not reason to strike the counts. Plaintiffs are not required to plead legal theories, and the federal rules "provide no basis for striking individual legal theories." *Zurbriggen v. Twin Hill Acquisition Co.*, 455 F. Supp. 3d 702, 719 (N.D. Ill. 2020). The Court declines to strike these portions of the complaint, while acknowledging that they add little to Soto's allegations. At worst, they give defendant an indication of the types of legal arguments Soto will make as the case progresses.

\*    \*    \*

Cicero's motion to dismiss is thus granted in part and denied in part. Soto's claims that he was demoted due to age discrimination and in retaliation for his assertion of his rights under Title VII and the ADEA are dismissed with prejudice because they were not exhausted. His claim that he was subjected to a hostile work environment and constructively discharged in retaliation for asserting his rights under Title VII survives the motion to dismiss because Soto sufficiently alleged he engaged in protected activity by attaching his first IDHR charge. The claim that he was retaliated against for asserting his rights under the ADEA by being subjected to a hostile work environment and constructive discharge is dismissed without prejudice; Soto's amended complaint must allege the protected activity that prompted the alleged retaliation. His claims of constructive discharge survive because they are reasonably related to other claims in his September 2019 IDHR charge. The claim brought under the Uniform Peace Officer's Act is dismissed without prejudice because Soto has not described how asserted his rights under that statute and triggered retaliation. The claim under 65 ILCS 5/11-12 survives as plead.

Date: September 29, 2021

John J. Tharp, Jr.
United States District Judge